TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-1111 |
| of | : | |
| | : | May 10, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE SAL CANNELLA, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May the governing board of a school district discipline a school principal for taking time off to perform emergency duty as a volunteer firefighter?

CONCLUSION

The governing board of a school district may not discipline a school principal for taking time off to perform emergency duty as a volunteer firefighter, but may require the principal to follow reasonable procedures to ensure that the needs of the school are adequately met during any absence.

ANALYSIS

Section 35020 of the Education Code provides that "[t]he governing board of each school district shall fix and prescribe the duties to be performed by all persons in public school service in the school district." Such duties, as required of a school principal, may be expected to include the principal's presence at the school during regular school hours.

1.                                                                94-1111

However, if also serving as a volunteer firefighter,[1] the school principal may be called upon to perform emergency duties which could result in occasional, and sometimes lengthy, absences from the school.

We are asked to determine whether a school principal may attend to emergency firefighting duties as a volunteer firefighter during regular school hours without being subjected to disciplinary action by the school district. We conclude that while disciplinary action may not be undertaken, the school district board of trustees may require the principal to follow reasonable procedures to ensure that the needs of the school are adequately met during any absence.

Labor Code section 230.3[2] provides:

"(a) No employer shall discharge or in any manner discriminate against an employee for taking time off to perform emergency duty as a volunteer firefighter.

"(b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has taken time off to perform emergency duty as a volunteer firefighter shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.

"(c) Subdivisions (a) and (b) of this section shall not apply to any public safety agency or provider of emergency medical services when, as determined by the employer, the employee's absence would hinder the availability of public safety or emergency medical services.

---

[1] "Volunteer firefighter" means any person registered as a volunteer member of a regularly organized fire department of a city, county, city and county, or district, having official recognition of the government of the city, county, city and county, or district in which such department is located. (Gov. Code, § 50952, subds. (h), (m).)

[2] Unless otherwise specified all section references hereinafter are to the Labor Code.

"(d) For purposes of this section, "volunteer firefighter" shall have the same meaning as the term "volunteer" in subdivision (m) of Section 50952 of the Government Code."

In analyzing the language of section 230.3 so as to resolve the question presented, we bear in mind several well established principles of statutory construction. As explained by the Supreme Court in *Dyna-Med, Inc.* v. *Fair Employment and Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387:

"Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citation.]"

The role of the volunteer firefighter and the need for protective legislation was expressed in the legislative history of section 230.3 at the time of its enactment. (Stats. 1989, ch. 167, § 1.) The report of the Assembly Committee on Labor and Employment stated with respect to the proposed legislation:

"Volunteer firefighters play an important and often vital role, not only in combating fires in their community, but also in assisting the state and other governmental bodies in fighting regional fires. Membership in volunteer firefighter units should be encouraged. Volunteers should not be subjected to the possibility of job loss or other negative employment consequences as a result of their services to the community."

While the legislative history expresses the general legislative intent in enacting section 230.3, we recognize that special rules of statutory construction apply when determining whether the general terms of a statute are applicable to a public agency and public officials. These rules were summarized by the Supreme Court in *City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276-277, as follows:

"[I]n the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute. [Citations.] But this rule excludes governmental agencies from the operation of general statutory provisions only if their inclusion would result in an infringement upon sovereign governmental powers. `Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.' [Citations.]"

We find it significant that although section 230.3 refers generally to an "employer," it specifically refers to a "public safety agency." (§ 230.3, subd. (c).) Under subdivision (c), section 230.3 is inapplicable to public safety agencies when the employee's absence would hinder the availability of public safety services. The term "public safety agency" is not defined in the Labor Code, but it is used in the Government Code, where it is defined as "a functional division of a public agency which provides firefighting, police, medical, or other emergency services." (Gov. Code, § 53102.) We may adopt such definition of "public safety agency" for purposes of section 230.3 under the principle of construction that "[t]he interpretation of an ambiguous statutory phrase may be aided by reference to other statutes which apply to similar or analogous subjects." (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008-1009.)

Accordingly, we find that the Legislature intended for section 230.3 to be applicable to public employers as well as private employers. If it had intended to exclude all public employers, there would have been no need to create the express exception for public safety agencies which appears in subdivision (c).[3] The exception would be mere surplusage. We construe the exception as indicating that only matters of public safety will justify an employer's rejection of a call for the emergency services of a volunteer firefighter. Such construction is consistent with the legislative history of section 230.3 which expresses a strong public policy favoring the immediate availability of all volunteer firefighters when emergencies arise.[4]

---

[3] A school district would not be considered an agency which provides police, medical, or other emergency services.

[4] We note that the Education Code contains specific provisions which govern the granting of leaves of absence to school employees for the purpose of appearing as a witness in court, responding to an official order from another governmental jurisdiction, or serving as a juror. (Ed. Code, §§ 44036-44037.) We do not find the call for volunteer firefighters to be in the nature of an "official order" and therefore regard Education Code section 44036 as inapplicable to the matter under consideration here.

Our construction of section 230.3 is also consistent with the provisions of section 220, which provide:

"Nothing in sections 200 to 211 and 215 to 219, inclusive, shall apply to the payment of wages of employees directly employed by the State or any county, incorporated city or town or other municipal corporation. All other employments are for the purposes of these sections private employments and subject to the provisions thereof."

Section 220 is part of the same legislative scheme (§§ 200-243) as section 230.3 and indicates that the Legislature could easily have excluded public employees from the requirements of the latter statute if it had so intended. (Cf., 73 Ops.Cal.Atty.Gen. 13, 23 (1990).)

We therefore conclude that the term "employer," as used in section 230.3, applies to public as well as private employers. Nevertheless, we do not believe that section 230.3 and Education Code section 35020 must be treated as irreconcilable.[5] We are directed to harmonize statutes relating to the same subject wherever possible. (*Dyna-Med, Inc.* v. *Fair Employment and Housing Com.*, *supra*, 43 Cal.3d at 1387.) Although advance notice of an emergency firefighting situation may not reasonably be expected, it would be incumbent upon the principal as the holder of a position of public trust[6] to inform the district of his firefighter status and to arrange with the district for a contingency plan to be utilized whenever he is called away for emergency firefighting duty. Such a plan could ensure that the public functions for which the principal is responsible do not unduly suffer as the result of any absence. The school district's ability to "fix and prescribe" the duties of its employees thus need not be fundamentally compromised in accommodating the public's emergency firefighting needs.

It is concluded that the governing board of a school district may not discipline a school principal for taking time off to perform emergency duty as a volunteer firefighter, but

---

[5] "[W]hen a special and a general statute are in conflict, the former controls." (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 391, 420.) Here, section 230.3 would necessarily be considered the more specific if the two statutes could not be reconciled.

[6] A school principal, as the highest level administrator within a particular school, is in a position which directly affects the school district's capacity to perform governmental functions. If a principal is able to leave his post on an unscheduled basis for non-school related purposes, the district's ability to ensure proper management of the school could be diminished. (See *Nutter* v. *City of Santa Monica* (1946) 74 Cal.App.2d 292, 302.)

may require the principal to follow reasonable procedures to ensure that the needs of the school are adequately met during any absence.

* * * * *